TATE, Judge
(dissenting from denial of rehearing).
The writer respectfully dissents from our reversal of the trial court.
The plaintiff is a pedestrian injured through tripping at a pedestrian crossing over an inconspicuous vertical projection to the street surface. The site of the accident was a heavily travelled intersection in the heart of the business district. The nature of the defect was, insofar as eastbound pedestrian traffic such as the plaintiff, a hump perpendicular to the surface of the street, nearly two inches in height. Since the entire street surface was overlaid with blacktop or asphalt, this asphalt bump was not readily conspicuous to casual observation.
The plaintiff pedestrian, a short stout lady, did not look at the surface of the street before she fell, since she was watching traffic conditions. I do not think she was under any duty to study in detail the surface of the crossing to discover inconspicuous defects before she walked across the street crossing; she was entitled to assume that the surface was reasonably safe for pedestrian traffic and contained no traplilce defects not readily apparent to ordinary observation.
In my opinion, my brethren of the majority are in error in holding that this sort of street defect, in the nature of a trap causing foreseeable danger to pedestrian traffic, nevertheless does not constitute a negligent defect on the holding that streets are intended primarily for motor vehicles, so therefore pedestrians must exercise a greater degree of care in rising such a crossing than the ordinary care exercised to use sidewalks.
In the first place, this particular accident occurred at a busy pedestrian-crossing in the heart of a commercial district, and there is no warrant for saying that the street crossing should not in due care have been constructed and maintained for the safety of pedestrians foreseeably using same in great numbers, as well as for the safety of motor vehicles. The present majority’s holding to the contrary is in conflict with Eble v. City of New Orleans, La. *230 App. 4 Cir., 181 So.2d 805 (see, e. g., the pedestrian there "was justified in assuming that the paving at that most important intersection was in good condition”, 181 So. 2d 807). I do not find the authorities relied upon by the majority, insofar as recent or pertinent, to require us to ignore the realistic duty of the city to maintain travel-ways reasonably safe for foreseeably intended use by the public.
In the second place, negligence is nothing more than conduct which creates an unreasonable risk of foreseeable harm to others. Brown v. Liberty Mutual Ins. Co., 234 La. 860, 101 So.2d 696; Fontana v. State Farm Mutual Auto. Ins. Co., La.App. 3 Cir., 173 So.2d 284; Larned v. Wallace, La.App. 3 Cir., 146 So.2d 434; Restatement of Torts Second (1965), Section 284. The risk of foreseeable harm to pedestrians at this busy intersection was clearly unreasonable. To leave this traplike vertical obstruction in the direct path of numerous pedestrians crossing this busy intersection, created a readily foreseeable risk of harm to them, especially if we take into consideration that such crossing pedestrians must keep a lookout for traffic and cannot keep their eyes fixed on the surface of the roadway.
In the present instance, the reversal is not only in conflict with the cited Eble case, but also with other decisions wherein pedestrians have been consistently allowed recovery when falling in circumstances similar to the present. St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273; Corkern v. Travelers Insurance Co., 229 La. 592, 86 So. 2d 205; Richard v. General Fire and Casualty Co., La.App. 3 Cir., 155 So.2d 676, certiorari denied; Mockosher v. City of Shreveport, La.App. 2 Cir., 155 So.2d 438; Toppi v. Arbour, La.App. 1 Cir., 119 So.2d 621.
For these reasons, the writer respectfully dissents from the refusal to grant a rehearing.